## WEARE v. SCHOOL DISTRICT.

Before the law of July 9, 1855, school districts had no power to borrow money to build school-houses, or to bind themselves by a promissory note therefor.

Where a meeting of a school district was called and held before that law took effect, but was adjourned to a time subsequent to its coming in force, *held*, that a vote at such adjourned meeting, to borrow money upon the promissory note of the district, was not valid.

ASSUMPSIT upon a promissory note, of which the following is a copy:

" $725.                                    WEARE, Nov. 10, 1855.

For value received, we, John Jepson, prudential committee, and Paige E. Gove, clerk of school district No. sixteen in Weare, duly authorized to hire money in the name of said district, for the purpose of building a school-house, and John W. Chase, Moses Sawyer, Allen Sawyer, Daniel Sawyer, Peter C. Gove, L. W. Gove, Lewis Greenleaf, J. P. Adams, Amos Chase, M. F. Currier, D. G. Chase, A. H. Emerson, and D. S. Stanley, as sureties, jointly and severally promise to pay the town of Weare, or order, seven hundred and twenty-five dollars, on demand, with interest annually, it being a part of the ministerial fund belonging to said town of Weare, now in the hands of Hiram Simonds, to take care of said fund in behalf of the town.

> JOHN JEPSON, Prudential Committee.
> PAIGE E. GOVE, Clerk.
> JOHN W. CHASE (and others), Sureties."

The following facts are admitted by the parties: namely,

That in 1855 John Jepson was the prudential committee, and Paige E. Gove the clerk of school district No. 16, in Weare, duly elected and qualified; that at a legal meeting of said school district, duly called and held, on the 7th day of July, 1855, there was in the warrant for the same among other things the following article:

"Art. 3. To see if the district will vote to build a new school-house, and to raise money and take the necessary measures therefor."

Under said article the following votes were passed:

"Voted to adopt the article.

Voted to raise $1000 to build a new school-house. Voted a committee of three be chosen, to draft a plan for a new school-house. Chose Amos Chase, Daniel G. Drew and Cyrus E. Wood to be said committee."

Said meeting was then adjourned from time to time until the 15th day of September, when the following resolutions were passed:

"*Resolved*, That the clerk of the district be instructed to request the selectmen to assess upon the district the sum of $400, for the purpose of building a school-house and paying for a school-house lot, and the clerk is hereby appointed an agent to receive said money, and pay the same to the building committee, who shall receipt to him for the same.

"*Resolved*, That the sum of $725, already voted to be raised by the district, be raised as a loan, and the clerk and prudential com-

mittee are hereby authorized to draw notes in the name of the district for the amount; and such notes, for the amount specified, and signed by one or both of said officers, shall be good against the district, and such money so raised shall be paid to the building committee and receipted for by them, as it is needed to pay outstanding bills against the district."

Under said resolutions the defendants, Gove and Jepson, as prudential committee and clerk, proceeded and hired the money of the plaintiff, and gave the note in suit, the defendants, Sawyer and Chase, signing as sureties.

The money was used in paying debts which had been created in building the school-house, as authorized by the foregoing votes.

It was agreed that judgment be rendered in the suit according to the opinion of the court upon the foregoing statement of facts, reserving to either party the right of a trial by jury.

*Isaac W. Smith,* for the plaintiff.

1. A liberal construction is ordinarily adopted in the exposition of commercial instruments, for the purpose of encouraging trade, &c. In furtherance of this policy, if it can, upon the whole instrument, be collected that the true object and intent of it are to bind the principal, and not to bind the agent, courts of justice will adopt that construction of it, however informally it may be expressed. Story Pr. Notes (ed. 1845), sec. 69, and authorities there cited and quoted.

The effect of the instrument is to be determined by the intention with which it was made; and if the agent had authority from his principal, and the words are such as not clearly to bind himself alone, and it can be ascertained that he intended to act for the principal, the latter will be bound. *Insurance Co.* v. *De Wolf,* 8 Pick. 61, is a case nearly or quite parallel with this, on this point.

The cases cited and commented upon in Story Pr. Notes, sec. 69, were founded upon notes nearly identical as to form and their legal effect with the note now in suit. *Ballou* v. *Talbot,* 16 Mass. 461, is a case in point, and almost exactly similar. The note described in *Mann* v. *Chandler,* 9 Mass. 336, is exactly identical with the note upon which the case at bar is founded. The cases are very numerous, as appears from an examination of Story, above cited, where this question has been raised, and decided as in *Mann* v. *Chandler.*

Is the language of the note in this suit such as not clearly to bind Jepson and Gove, and such that it can be ascertained that they intended to act for the defendants? We submit that it is. They are named in the body of the note as prudential committee and clerk, respectively, of school district No. 16 in Weare, and they sign as such. The note also recites that they are " duly authorized to hire money in the name of said district." And the object for which the money is hired is also recited, namely, " for the purpose of building a school-house." It must be clearly apparent that but one inference can be drawn from these words, and that is, that the parties intended this to be the note of the district, and not of its agents.

2. Were the prudential committee and clerk duly authorized to hire money? The case finds that the meeting was duly called and held on the 7th of July, 1855. The vote "to adopt" the third article was in effect a vote to build a new school-house. No other construction can be given to the words. The district then voted to raise $1000 for that purpose. For this vote there was authority in the third article, and the vote is therefore valid. It will not be contended that the adjournment to the 15th of September was not legal. We suppose there can be no necessity for us to contend that the district had the power at the same or at an adjourned meeting to reconsider any of its votes. Did it on the 15th of September reconsider the vote of July 7, raising $1,000? We submit that the record shows that it did. The court will give effect to the action of the meeting if it can properly do so. Such meetings are not supposed to be, nor are they in fact, governed by the strict rules of parliamentary law, such as govern deliberative and legislative assemblies, composed of talented, educated and experienced men. A meeting composed of all the voters of a small school district, in a State sparsely settled like New-Hampshire, must, *ex necessitate rei*, be governed by forms and methods of proceedings substantially of their own creation, such as the good, solid, common sense of the people naturally suggest. Any other rule would lead to inextricable confusion.

The record does not show any motion or vote on the 15th of September to reconsider the vote of July 7, raising $1,000, but we contend that such motion and vote, in terms, were not necessary, and that that vote, by the action of the meeting of September 15, was so far reconsidered that the sum to be raised was increased from $1,000 to $1,125, and that the manner in which the money was to be raised was so far changed as to provide that $400 should be raised by a tax, and $725 by a loan. If such be not the effect of the votes, then they are void, and, as we remarked above, the court will always give effect to the action of every meeting duly called and held, when it can properly do so.

The vote authorizing a loan of $725 also made Jepson and Gove the agents of the district to effect the loan, and authorized either or both of them to sign notes therefor, which "shall be good against the district." It can make no difference that they hired the money of one person and gave but one note. It was a substantial and practical compliance with the terms of their authority.

The word "raise," used in the third article of the warrant, does not necessarily imply that the money is to be raised by taxation alone. It might be raised as well by loan as by taxation, or by both means, as was ultimately provided.

3. It will perhaps be contended by counsel for the defendant that the vote authorizing a loan is invalid, because chapter 1687 of the Pamphlet Laws, authorizing school districts to hire money for certain purposes, did not take effect till July 9, 1855.

The vote to hire money was not passed till more than two months after this statute took effect. It can make no practical difference that the warrant for the meeting was posted before the law went

into operation. The object of a warrant is to give notice of the subjects that are to be considered. There was an article broad enough in its terms to authorize the hiring of money, and a statute authorizing the same thing in force. Ample notice was thus given of the subject, and we can not conceive how it can operate as a hardship to the defendant to hold the vote valid and binding, unless it be because the effect of it is to compel the payment of an honest debt.

But we submit that this statute conferred no new or additional powers upon school districts. The statutory provisions in relation to the powers of towns and of school districts are very similar. Each is a body politic, and may sue and be sued, &c. Towns may purchase and hold real and personal estate, may sell and convey the same, and may make any contracts which may be necessary and convenient for the transaction of the public business of the town. Comp. Stat., ch. 32, secs. 1, 3. Every school district shall be a' body politic and corporate, and may sue and be sued, take, hold, manage and convey real and personal property for the use of the district, and make and enforce all necessary contracts in relation thereto. Comp. Stat., ch. 73, sec. 4. The power thus conferred upon these two classes of corporations to carry into effect their respective duties and obligations is nearly identical. It never has been doubted that towns have the power to raise money by a loan, and they have exercised it from the earliest settlement of the State. Further than this, the courts have decided that the selectmen have power to hire money in behalf of the town, and to give notes therefor without any authority or vote from the town, *Sanborn* v. *Deerfield*, 2 N. H. 251; *Andover* v. *Grafton*, 7 N. H. 298, under the power conferred by law of managing all the prudential affairs of the town.

If the language of the statute, relating to the powers of towns, is broad enough to authorize them to hire money, the same construction must follow of the language respecting the powers of school districts, for the terms used are similar, and even strikingly identical. That school districts have but seldom used the power, or even never used it, does not prove that they had not the power, but only that they did not choose to exercise it.

*Morrison, Stanley & Clark*, for the defendants.

The district had no power to borrow money, or to authorize the committee to borrow money and bind the district therefor. School districts are *quasi* corporations, of the most limited powers known to the laws. They have no powers derived from usage, their existence extending back but a few years. They have the powers expressly granted them, and such implied powers as are necessary to enable them to perform their duties, and no more. *Harris* v. *School District in Canaan*, 28 N. H. 58; *Johnson* v. *Dole*, 4 N. H. 478; *Wilson* v. *School District*, 32 N. H. 118.

The powers of school districts are special and limited, and are such only as are expressly given by statute, or necessarily result from such granted powers. 12 Me. 258. If they undertake to do any act not within said powers it is illegal and void. 12 Me., before cited.

The powers of school districts are very distinctly and clearly prescribed in chapter 71 of the Revised Statutes. It is therein provided "that at any meeting, legally held for the purpose, they may vote to build, purchase, alter or remove a school-house in and for such district, and other necessary buildings therefor, and to furnish the same with all necessary apparatus and furniture for the use of the school therein; may decide upon the location thereof and purchase land therefor; may choose committees, with powers to carry said votes into effect, and may raise money therefor." It will be observed that the power to borrow money on the credit of the district is no where given in express terms, nor can it be any where implied. The power to borrow money is not necessary to enable them to do what the law requires of them — to perform the duties imposed upon them; nor does the power to raise money give the district an implied authority to borrow it. The word "raise," as used in this connection, means to procure by taxation. Had the legislature intended to confer upon school districts the power to borrow money, it would have been so expressed in unambiguous language. But we do not need any further argument to the point that districts had, at that time, no power by law to borrow money. It is found in the fact that the legislature in July, 1855, passed an act giving in express terms to districts this power. Pamph. Laws, June, 1855, ch. 1687, p. 1580. But it may be said that the act of 1855, above cited, was in force at the time of the votes under which the note in suit was given. To that we reply that the case finds the meeting was duly called and held on the 7th of July, 1855. The act of 1855 was approved July 9, 1855, and although there were meetings by adjournment after that time, and the resolutions under which the note in suit was given were adopted after that time, still it was but the meeting of July 7. It was but one day in law. It does not seem to be necessary to cite authorities upon a point so well established as this.

It may be urged, further, that if the district at an adjourned meeting, and after the act of 1855 was approved and took effect, could borrow money, though the meeting was called and held before the act aforesaid took effect, still the warrant was defective. The article in the warrant under which the resolutions authorizing the notes in suit were passed, was as follows: "To see if the district will vote to build a new school-house, and to raise money and take the necessary measures therefor."

The statute provides that the warrant shall state the time, place and purposes of the meeting. Laws of 1845, ch. 222, sec. 1; Comp. Stat., ch. 74, sec. 1; *Gordon* v. *Clifford*, 28 N. H. 402. It seems to be the doctrine of the courts in this State that the warrant shall give information of the subject matter to be acted on. *Tucker* v. *Aiken*, 7 N. H. 113. Tried by this standard we say that the purpose to borrow money is no where stated, nor can it be implied from the language used.

The raising money as stated in that article could not have been understood the borrowing of it, and the voters of the district would not in any way have understood that the purpose was to raise it any other way than by taxation. Nor can it be implied from the

words " take the necessary measures therefor." The obvious construction of this sentence is, that the district when met were to vote to build or not to build a school-house, and if to build it, to raise the money, that is, vote the amount of money to be assessed, and to appoint the proper officers to give effect to the votes thus taken. It is obvious, from the votes taken at the meeting on the 7th of July, that this question was so understood by the district, and that the subsequent resolutions which were adopted, and under which the note in suit was given, were all an after thought.

If it was the purpose to borrow money, or to authorize the committee to borrow money, the warrant does not give that information, and does not in any manner, so far as the note in suit is concerned, give information of the subject matter to be acted upon.

It is urged on behalf of the plaintiff that although the power to borrow money is not given in express terms to districts, still it is to be inferred from the statute, because the statutory provisions in relation to the powers of towns and of school districts are similar, and it is said that the power of towns to borrow money has never been doubted. It is to be observed that the powers of these two classes of corporations in respect to the making of contracts is not the same. Towns may make any contracts which may be necessary and convenient for the transaction of the public business of the town. Comp. Stat., ch. 32, secs. 1, 3. School districts may make and enforce all necessary contracts in relation to real and personal property of the district. Comp. Stat., ch. 73, sec. 4. The power to borrow money is not necessary in order to do what the district is empowered to do. It might be convenient, but in no sense do we conceive it to be necessary. Towns can make any and all contracts which are convenient and necessary, while districts are restricted only to that class of cases where it is necessary. The necessity of the district is only to be consulted in making contracts, while towns are at liberty to consult not only their necessity but their convenience.

The first point raised by the plaintiff in his brief we do not controvert in this case, believing with the plaintiff's counsel that the note is the note of the district, so far as the district could authorize any one to bind it by note for borrowed money.

Upon the second point made by the plaintiff's counsel in his brief, we contend that the votes taken at the meeting of July 7, 1855, were a full and complete action upon the third article, and that the district had done all they could do under it, without a reconsideration ; that such reconsideration must have been in express terms, and not by implication ; that there was any express reconsideration or motion to that effect is not claimed, and the case finds that there were intermediate adjournments between July 7, 1855, and September 15, 1855. To hold that a vote might be taken, the effect of which would be a reconsideration of former votes, without any notice or any vote to that effect, would, it seems to us, lead to a great degree of looseness and irregularity, and would do manifest injustice. Trying the action of the district by the standard suggested by the plaintiff's counsel, that is, that the meetings of school districts should be governed by forms and methods of proceeding

such as the good, solid common sense of the people naturally suggest, and we submit that the conclusion that the action of the meeting of July 7, 1855, was reconsidered by the subsequent action of the district, can not be arrived at.

BELLOWS, J. The first question is, whether, prior to the law of July 9, 1855, school districts had the power to borrow money to build school-houses. By the law of December, 1805 (Laws of 1815, 366), power was given to divide a town into school districts; and such districts were empowered to raise money to build or purchase school-houses in their respective districts; and by the express provisions of the act the money so raised was to be assessed and collected in the manner therein provided : namely, by a tax upon the inhabitants and property of the district. The laws of July, 1827 (ed. 1830, 432), and the Rev. Stat. (ch. 71), are substantial reënactments of the law of December, 1805 ; prior to which the duty seems to have rested upon the town at large. Law of December, 1804, ed. 1805, 295. Under these provisions it is obvious that no power is conferred upon school districts to borrow money, and none has been acquired by usage ; and therefore we are of the opinion that prior to the law of July 9, 1855, no such power existed. There is between towns and school districts but little similarity. Towns are authorized to purchase and hold real and personal estate for the public uses of the inhabitants, and to sell and convey the same, and may make any contract which may be necessary and convenient for the transaction of the public business of the town. That public business includes, among other things, the raising, assessment, and collection of all the public taxes, except the raising, simply, of the State and county taxes; the support of the poor, the laying out, building, and support of public highways, and the raising of money for schools, constituting a very large and important part of what may be regarded as the domestic functions of a government. At an earlier period of the existence of these corporations their functions were even much more comprehensive; and accordingly, by long usage, they have exercised the power of borrowing money. On the other hand, school districts have always been regarded as possessing very limited powers, being authorized to hold and convey real and personal property for the use of the district, and to make and enforce all necessary contracts in relation thereto ; and the mode of raising the money to purchase or obtain such property is specially marked out.

We think, therefore, there is no such analogy between the two corporations as to furnish a guide upon this point. The general nature of the powers of such districts is shown in *Johnson* v. *Dole*, 4 N. H. 480 ; *Harris* v. *School District*, 28 N. H. 58, and *Wilson* v. *School District*, 32 N. H. 126.

The next question is, whether the vote of September 15, 1855, can be regarded as passed at a meeting duly called for that purpose. The article in the warrant, " To see if the district will vote to build a new school-house, and to raise money and take the necessary measures therefor," must be construed in reference to the law

existing at the time the warrant was posted or served, and would of course authorize a vote to raise money by taxation. Indeed, as that was the only method then existing to raise money for such a purpose, the warrant might well be regarded as a call to act on the subject of raising money by taxation alone. Nothing else, in fact, *could* have been understood at the time the notice was given, and nothing more could have been done on the day · of the meeting; and therefore we think that the call was limited to that mode of raising the money. It is urged that the call is broad enough to embrace the raising it by loan; and in this we should concur, had such a power existed when the notice was given; but as it did not then exist, the general terms of the call can avail nothing. Between the two modes there is a substantial distinction; and it well might be, that voters who were willing to take the risk of the action of the district in raising money by taxation, would feel called upon to attend and watch with some care the less provident method of raising it by borrowing. At all events, we think the voter is entitled to notice of the purpose to raise the money by hiring; and this he can in no just sense be deemed to have had, when, at the time he received his notice, as well as at the time of the meeting, no such power to raise money existed. It is true that at the time of the adjourned meeting such a power did exist, but of that adjourned meeting those at least who were not present at the first had no legal notice.

Under these circumstances we are constrained to hold that the vote in question was not passed at a meeting duly called for that purpose, and therefore the vote declared on is not binding upon the district. Should it, however, be made to appear that the money so obtained had come to the use of the district, the note having been made after the new law had taken effect, it would be evidence of a ratification; especially, if the district had knowledge of the way the money was obtained; but enough is not now shown to authorize a legal inference of ratification. See *Wilson* v. *School District*, 32 N. H. 126, and *Harris* v. *School District*, 28 N. H. 58.

There must, therefore, be judgment for the defendants, unless further proceedings are desired.